**REXNORD, INC., Plaintiff,**

v.

**The LAITRAM CORPORATION and Intralox, Inc., Defendants.**

**No. 85–C–1039.**

United States District Court, E.D. Wisconsin.

Jan. 10, 1986.

Maureen McGinnity, Foley & Lardner, Milwaukee, Wis., Kenneth E. Payne and Richard H. Smith, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., for plaintiff.

Reuben W. Peterson, Jr., Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis.,

Paul J. Hayes and Victor B. Lobovici, Weingarten, Schurgin, Gagnebin & Hayes, Boston, Mass., for defendants.

## ORDER

WARREN, District Judge.

Currently pending in the above-entitled action is the defendants' motion for a preliminary injunction. For the reasons stated below the Court hereby DENIES this motion.

## BACKGROUND

On July 8, 1985, plaintiff Rexnord, Inc. ("Rexnord") commenced this action seeking declaratory relief. Rexnord is a Wisconsin corporation which manufactures and sells, *inter alia*, conveyors and conveyor drive components. Defendant Laitram Corporation ("Laitram") is a Louisiana corporation and defendant Intralox, Inc. ("Intralox") is its wholly-owned subsidiary, also a Louisiana corporation. The present action pertains to the following patents owned by Laitram: (1) U.S. Patent No, 3,870,141 ("the '141 patent"), issued March 11, 1975; (2) U.S. Patent Reissue 30,341 ("the '341 patent"), issued July 22, 1980; (3) U.S.Patent No. 4,051,949 ("the '949 patent"), issued October 4, 1977; and (4) U.S. Patent No. 4,159,763 ("the '763 patent"), issued July 3, 1979. These patents cover certain conveyor belt products manufactured and sold through Intralox. Rexnord seeks a declaratory judgment that these patents are invalid, unenforceable, and not infringed by Rexnord.

On July 26, 1985, defendants moved this Court for a preliminary injunction prohibiting Rexnord from the further manufacture, use or sale of its Series 4802, 4803 and 4809 modular plastic conveyor belts pending a final judgment in this matter. Defendants contend that these products infringe Laitram's '141, '341, '949 and '763 patents. The defendants' position is based largely on a decision of the United States District Court for the District of Maryland, the Honorable Magistrate Frederick N. Smalkin presiding, holding that the four afore-

mentioned Laitram patents were valid and finding that various products of The Cambridge Wire Cloth Co. ("Cambridge") infringed on these patents. *Laitram Corp. v. Cambridge Wire Cloth Co.*, No, 83–C–3126, oral op. (D.Md. March 19, 1985) ("the *CWC* decision"). Defendants contend that the aforementioned Rexnord 4800 Series conveyor belts are substantially similar to the Cambridge products found to infringe the aforementioned Laitram products and should therefore be likewise found by this Court to infringe the Laitram patents. Defendants further contend that the standards for issuing a preliminary injunction (*infra.*) are present in this case. Rexnord counters the defendants' position by reasserting the invalidity and its non-infringement of the Laitram patents and by contending that the preliminary injunction standards have not been met.

## DISCUSSION

### I. Preliminary Injunction Standards

This Court may issue a preliminary injunction to "prevent the violation of any rights secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

Recently, in *Maxim's Limited v. Badonsky,* 772 F.2d 388 (7th Cir.1985), the Seventh Circuit stated the following regarding preliminary injunctions:

The district court must weigh four factors in deciding whether to grant or deny [a preliminary] injunction: (1) whether there is an adequate remedy at law (that is, whether interim harm caused by the activity to be enjoined can be completely offset by a subsequent award of damages or other legal relief); (2) whether any such irreparable harm to the plaintiff caused by a failure to enjoin the activity outweighs irreparable harm to the defendant caused by an injunction; (3) whether the plaintiff has some likelihood of success on the merits; and (4) whether grant of the injunction would disserve the public interest. [citation omitted]. These factors are to be balanced, one against the other, so that

where harm to the plaintiff significantly outweighs the harm to the defendant, and the legal remedy would not be adequate, less of a likelihood that plaintiff will prevail is required.

*Id.* at 390–91.

In patent infringement cases courts have generally required a stronger showing before ordering a preliminary injunction. The Court of Appeals for the Federal Circuit ("CAFC")[1] has stated:

The usual requirement of a showing of probability of success on the merits before a preliminary injunction will issue has historically been even stronger in a patent case. Besides having to prove title to the patent, it has been stated as a general proposition that the movant must show that the patent is beyond question valid and infringed. [citations omitted]. In order to meet the burden of showing validity, the movant has sometimes been required to show either that his patent has previously been adjudicated valid, that there has been public acquiescence to its validity, or that there is conclusive direct technical evidence proving its validity. [citations omitted].... The basis for [this requirement] appears to be both a distrust of and unfamiliarity with patent issues and a belief that the ex parte examination by the Patent and Trademark Office is inherently unreliable. [citation omitted].

As with preliminary injunctions in other types of cases, the movant is also required to demonstrate in a patent case that he will suffer immediate irreparable harm if the injunction is not granted. [citation omitted]. Some courts refuse to find irreparable injury where the alleged infringer is solvent and money will adequately compensate the injury. [citation omitted]. However, at least one court is of the opinion that where the showing on patent validity is very strong, invasion of the inventors right to exclude granted by the patent laws should be sufficient irreparable harm without a showing that the infringer is financially irresponsible. *Zenith Laboratories, Inc. v. Eli Lilly and Co.,* 460 F.Supp. 812 (D.N.J.1978).

Finally, where relevant, the court should take into account both the possibility of harm to other interested persons from the grant or denial of the injunction, and the public interest. [citation omitted]. In reaching its decision, the district court must consider the above factors and balance all of the elements. No one element will necessarily be dispositive of the case.

*Smith Intern., Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1578–79 (Fed.Cir.1983).

The purpose of a preliminary injunction is to preserve "that state of affairs existing immediately before the filing of the litigation, the last uncontested status which preceded the pending controversy." *Litton Systems, Inc. v. Sundstrand Corp.,* 750 F.2d 952, 961 (Fed.Cir.1984). Furthermore, "a preliminary injunction preserves the status quo if it prevents future trespasses but does not undertake to assess the pecuniary or other consequences of past trespasses." *Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230 (Fed.Cir.1985). If the infringing party "has allowed itself to become excessively dependent upon infringing sales, the status quo catchword does not necessarily allow it to continue such dependence, apart from other factors. The concept is not inconsistent with stopping trespasses 'cold turkey'." *Id.*

When a holder of a patent " 'clearly shows' that his patent is valid and infringed, a court may, after a balance of all of the competing equities, preliminarily enjoin another from violating the rights secured by the patent." *Id.* at 1233. Irreparable harm is presumed upon this showing of validity and continuing infringement. *See Id.* at 1233; *Smith Intern., Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed.Cir. 1983).

---

1. CAFC has exclusive jurisdiction over appeals from orders granting or denying injunctions in patent cases. 28 U.S.C. § 1292(a)(1) and (c)(1).

Simply because it appears that a patentee's possible damages are compensable in money, it does not necessarily follow that there is no irreparable harm to justify a preliminary injunction. In a case containing similar circumstances, CAFC has stated:

> [The alleged infringer's] arguments that infringement and related damages are fully compensible in money downplay the nature of the statutory right to exclude others from making, using, or selling the patented invention throughout the United States. [citations omitted]. While monetary relief is often the sole remedy for past infringement, it does not follow that a money award is also the sole remedy against future infringement. The patent statute further provides injunctive relief to preserve the legal interests of the parties *against future infringement* which may have market effects never fully compensable in money. If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts. (Emphasis in original).

*Atlas Powder Co. v. Ireco Chemicals, supra,* at 1233.

In sum, it appears that the standard for issuing a preliminary injunction in a patent infringement case differs slightly from this standard in other type cases. Specifically, the burden of proving validity and infringement, *i.e.,* "the likelihood of success on the merits" element, is greater. However, once this burden is met, the burden of proving the necessity for injunctive relief, *i.e.,* the "no legal remedy" and "irreparable harm" elements, is lesser. Finally, the integrity of the balancing of the equities performed by the Court in determining whether injunctive relief is appropriate remains intact. *Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 1272 (Fed.Cir.1985).

## II. Validity

A patent, once issued, is presumed valid. 35 U.S.C. § 282. This presumption is enhanced where the patent has been previously adjudicated valid. *Atlas Powder Co. v. Ireco Chemicals, supra,* at 1233. This enhancement attaches even where the prior adjudication was between different parties. *Id.*

Rexnord contends that the Laitram '141 and '949 patents are invalid because they were anticipated by prior art which was not considered by the Patent Office when it issued these patents. In *Lindeman v. Maschinenfabrik v. Am. Hoist and Derrick,* the CAFC stated:

> To the extent that the examiner's consideration of uncited art is material, the burden is on the challenger to show that "that prior art had *not* been considered." *Richdel Inc. v. Sunspool Corp.,* 714 F.2d 1573 (Fed.Cir.1983). The challenger meets that particular burden by showing that the uncited art is more relevant than that cited, just as the patentee defeats the uncited art by showing that its relevancy is equal to or less than that cited.

730 F.2d 1452, 1460 (Fed.Cir.1984). Further, "[a]nticipation requires the disclosure in a single prior art reference of each element of the claim under consideration." *W.L. Gore & Associates Inc. v. Garlock Inc.,* 721 F.2d 1540, 1554 (Fed.Cir.1983).

### A. Claim 1 of '141

Rexnord asserts that Claim 1 of the '141 Patent is anticipated by Graham 728,390. ("Graham '390 Patent"). The Graham '390, patented May 19, 1903, depicts a Hot Coke Conveyer. Essentially, this patent describes a slotted, cast-iron, hinged plate. Rexnord asserts that this description anticipates '141's modular construction and integrally formed elongated members joining parellel link ends. The Court finds that the perforated grid depicted by Graham '390 does not appear to anticipate Claim 1 of '141.

Rexnord asserts that the May-Fran Type 25125 Module ("the May-Fran 25125") anticipates '141. The May-Fran 25125 depicts a retangular plate with perforations and parallel link ends present on either side of

the plate. Rexnord traces an imaginary line connecting opposite link ends on the May-Fran 25125 and labels the resulting line an elongated member similar to the '141 elongated members connecting its link ends. Rexnord further traces an imaginary line parallel to the May-Fran 25125 link ends and between its perforations on the plate and labels the resulting depiction cross ribs similar to the '141 cross ribs connecting its elongated members. The Court is not persuaded. Only through such creative tracing can elongated members and cross ribs like those taught by '141 be found on the May-Fran 25125. The May-Fran, like Graham, is merely a perforated flat plate. It does not appear to anticipate the modular construction of Claim 1. Defendants have some likelihood of success on the merits regarding these issues.

### B. Claim 19 of '141

Rexnord asserts that the Franz patent 2,987,167 ("the Franz '167 patent") and the May-Fran type 6187 belt anticipate claim 19 of '141. Claim 19 describes a conveyor belt comprised of modules that are formed as an integral single unit. Paragraph 1 of claim 19 describes, *inter alia*, "an intermediate section integrally formed with and joining said first and second pluralities of link ends." The Franz '167 similarly describes a conveyor belt having modules with equal numbers of link ends on both ends. However, no intermediate section integrally forms and joins these link ends. Rather, the Franz '167 link ends are secured to the undersides of the connecting tongues by line spot or projection welding. The link ends of May-Fran Type 6187 are likewise not integrally formed. Rather, the 6187 describes a stamped plate with tabs bent to form link ends. Neither the Franz '167 nor the May-Fran 6187 appears to anticipate Claim 19 of '141. Defendants have some likelihood of success on the merits regarding these issues.

### C. Claim 21 of '949

Rexnord asserts that Halmrest patent 2,592,687 ("Halmrast '687") and U.K. patent 1,310,992 ("U.K. '992") anticipate Claim 21 of '949. The Halmrest '687 shows a claim composed of multiple individual links. The *CWC* court found that use of individual links that are individually assembled does not involve modular construction as described by Claim 21 of '949. *CWC* at 19. This Court agrees with the *CWC* court's assessment and finds that the Halmrest '687 does not seem to anticipate Claim 21. Defendants are likely to succeed on this issue.

The U.K. '992 describes a conveyor belt composed essentially of a series of U-shaped links extending across the belt's width. Unlike the '949, the vanes of the U.K. '992 are not substantially parallel. Nor is there the modular construction as shown by '949; rather there is only a continuous series of links extending across the belt's width. The *CWC* court found that such a construction was not modular. *CWC* at 42. This Court agrees and finds that U.K. '992 does not appear to anticipate Claim 21 of '949. Defendants have some likelihood of success on the merits regarding this issue.

### III. Infringement

Infringement of a patent can be found either through literal infringement or through the doctrine of equivalents. As stated by the CAFC:

Under the doctrine of equivalents, an accused product that does not literally infringe a structural claim may yet be found an infringement "if it performs substantially the same function in substantially the same way to obtain the same result" as the claimed product or process. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 [70 S.Ct. 854, 856, 94 L.Ed. 1097] (1950) (quoting from *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42 [50 S.Ct. 9, 13, 74 L.Ed. 147]). The doctrine is judicially devised to do equity. "Courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing," *id.* 339 U.S. at 607 [70 S.Ct. at

855–56], and again, "The essence of the doctrine is that one may not practice a fraud on a patent," *id.* at 608 [70 S.Ct. at 856].

*Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1361 (Fed.Cir.1983). In the present case, Laitram asserts the following infringements: (1) Series 4802, 4803 and 4809 infringe Claims 1 and 19 of '141 and Claim 21 of '949; and (2) Rexnord's Series 4802 infringes Claims 1 and 8 of '763. The defendants' primary argument is that the Rexnord 4800 Series are in all pertinent respects identical to the Cambridge belt found by the *CWC* court to infringe the Laitram patents.

### A. Claim 1 of '144

Laitram asserts that Rexnord's 4800 Series belts infringe Claim 1 of '141. Rexnord contends that its 4800 Series patents do not infringe Claim 1 of '141 because they possess an intermediate section connecting the link ends rather than elongated members described in Claim 1. From a comparison of the Rexnord belts with the Cambridge belts and based on the *CWC* court's finding that the Cambridge belt's purpose is to absorb the tensile force as taught by '141, the Court finds that '141 is infringed by the Rexnord 4800 Series. Rexnord's arguments to the contrary distort the similarity between these belts' functional purpose and method of performance. Laitram is likely to prove infringement of Claim 1 at trial.

### B. Claim 19 of '141

Laitram asserts that Rexnord's 4802 belt infringes Claim 19 of '141. Rexnord counters this assertion by arguing that since on a 12-inch 4802 module only four of the thirty-one link ends are wide enough to be in contact with the widened link ends of the adjacent connected modules the 4802 does not infringe Claim 19. In its Reply Brief, Laitram brushes aside Rexnord's contention by perfunctorily and erroneously stating "Rexnord admits infringement of claim 19 of the '141 patent." Defendants' Reply Brief at 10. However, even absent defendants' enlightenment on this issue the Court

finds that Rexnord's 4802 infringes Claim 19 of '141. The link ends in 4802 perform substantially the same function as the '141 link ends, by substantially the same means, in a substantially similar way to obtain the same result. *Hughes Aircraft, supra* at 1561. Indeed they are virtually the same with the exception that the '141 may undertake a greater maximization of shear loads. This difference is insignificant. Accordingly, it appears to the Court that 4802 infringes Claim 19 of '141. Defendants have some likelihood of succeeding on the merits as to this issue.

### C. Claims 1 and 8 of '763

Laitram asserts that Claims 1 and 8 of '763 are infringed by the Rexnord 4802. Rexnord contends that its 4802 differs substantially from these Claims based on the differences in the spacing devices. Rexnord describes its 4802 spacer as a "link end" positioned between a pair of link ends of the same module dissimilar to the '763 spacer that is positioned between confronting link ends. Based on this verbalization of its product's design, Rexnord asserts that the 4802 infringes neither Claims 1 nor 8 of '763. The '763 describes and teaches forming a spacer integral with link ends. This is precisely what the 4802 spacer device does and Rexnord's attempts to distinguish it from the '763 spacer are unpersuasive. The Court is persuaded that both Claims 1 and 8 of '763 are infringed by Rexnord's 4802. Defendants will likely establish this infringement at trial.

### D. Defendants' Other Infringement Claims

Rexnord does not dispute in its brief, nor do they explicitly concede, the defendants' other assertions of patent infringement. The Court is satisfied that defendants have some likelihood of success on the merits based on defendants' arguments and on an examination of the exhibits.

### IV. RULING

◼ In the preceding examination of the technical issues raised in this motion and in formulating its decision, the Court candidly admits that it is guided by the maxim "ac-

tions speak louder than words." Greater reliance is placed on this maxim in the present case because the actions are those of large corporations and their agents who have substantial financial interests at stake. Further, the corresponding words involve the hyper-technical and intricate lingo and issues of patent law. The Court considers that it has expertise in discovering truth based on the actions of interested litigants. However, the Court humbly confesses that its expertise in ascertaining truth from technical patent documents and the even more technical arguments is not as glowing. This confession is not intended as an abdication of the Court's responsibility to decipher the cryptic evidence and administer justice therewith. Rather, the Court has fulfilled its responsibility but in doing so the following circumstances involving the litigants and various interested persons have played an influencing role.

Rexnord vigorously asserts the clear invalidity of the Laitram patents. However, this Court questions the sincerity of Rexnord's asserted convictions in light of its prior attempts at purchasing a nonexclusive license on these same Laitram patents. *See* Exhibit M. of *Defendants' Reply Memorandum in Support of Motion for Preliminary Injunction.* The Court expresses incredulity at the notion that an intelligent and resourceful corporation like Rexnord would offer to buy clearly invalid patents for nearly $2,000,000.00. Similarly, various Rexnord documents describing its 4800 Series as being similar to the Intralox products diminishes from Rexnord's current position that its products are dissimilar. These considerations played a role in the Court's findings of validity and infringement of the Laitram patents. In conclusion, the Court finds that defendants possess some likelihood of success on the merits.

However, the crucial issue of irreparable harm is what ultimately compels this Court to deny the preliminary injunction motion. At a trade show in 1984, Mr. J.M. Lapeyre, Sr. observed a display of the then new Rexnord 4800 Series. Mr. Lapeyre is the president of Laitram and Intralox and is the inventor of '941 and a co-inventor of '141. Consequently, Mr. Lapeyre has a financial interest in precluding any infringement on the patents which are the lifeblood of his company. Moreover, and perhaps more significantly, Mr. Lapeyre is a prolific inventor of obvious genius who does, one assumes, take pride in his creations and in his own inventiveness. One would further assume that upon observing any product that even hints at infringing one of his inventions Mr. Lapeyre's curiosity and pride would compel him to determine whether any such infringement actually existed.

However, after observing the Rexnord 4800 Series at the trade show in 1984, Mr. Lapeyre apparently was not so aroused. At least not so aroused to commence legal proceedings to terminate any infringement of the Laitram patents. Rather, Laitram waited 16 months, until June, 1985, to bring its lawsuit. Laitram blames this delay on Mr. Lapeyre only observing, and not examining, the 4800 belts at the 1984 trade show and because Laitram did not perceive Rexnord as a competitive threat until March, 1985.

The Court views Laitram's hindsight explanations with great skepticism considering Mr. Lapeyre's talents and position and the flippancy with which defendants viewed a large, aggressive company like Rexnord as a potential competitive threat.

In *GTE Corp. v. Williams,* 731 F.2d 676 (10th Cir.1984), the Tenth Circuit discussed the implications resulting where a party delays in seeking relief for an alleged trademark infringement:

> Delay in seeking relief, however, undercuts any presumption that infringement alone has caused irreparable harm *pendente lite;* therefore such delay may justify denial of a preliminary injunction for trademark infringement. 'Although plaintiff contends that it will be irreparably harmed should defendants' activities not be enjoined, it has waited nearly a year before seeking any relief. Delay of this nature undercuts the sense of urgen-

**474**

cy that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.' 731 F.2d at 678 *quoting Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 609 (S.D.N.Y.1979); *see also Ideal Industries v. Gardner Bender, Inc.,* 612 F.2d 1018, 1025 (7th Cir.1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980) (delay is a factor to be considered in assessing irreparable injury).

If defendants legitimately believe that they will "go belly-up" by Rexnord's continued production of its 4800 Series pending the trial, they would have sought legal relief earlier. Indeed they would have hurried to the Court to save their interests. The Court believes that such failure to promptly commence a suit is fatal to defendants' contention of irreparable harm. Resultingly, in balancing the equities, the scale tips towards Rexnord. There is presently no sense of urgency necessary for issuing a preliminary injunction. *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984). *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 609 (S.D. N.Y.1979) (delay of less than one year in commencing action precludes a finding of irreparable harm); J. Gilson, *Trademark Protection and Practice* § 8.07[1] (1984) ("Undue delay in seeking [a preliminary injunction] once plaintiff has, or should have, knowledge of the infringement will probably result in denial."). Accordingly, the motion for a preliminary injunction is DENIED.