CRUCIBLE MATERIALS CORPORA-
TION, Plaintiff/Counterdefendant/
Counterclaimant,

v.

SUMITOMO SPECIAL METALS CO.
LTD., Defendant/Counterclaimant/
Counterdefendant.

Civ. A. No. 89–1170.

United States District Court,
District of Columbia.

Aug. 2, 1989.

Ford F. Farabow, Jr., Clair X. Mullen, Jr., George E. Quillen, Kathleen G. Dussault, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., for plaintiff/counterdefendant/counterclaimant.

Jay Greenfield, Steven Fassman, Eric Orts, Paul, Weiss, Rifkind, Wharton, & Harrison, Barry E. Bretschneider, Wegner & Bretschneider, Washington, D.C., for defendant/counterclaimant/counterdefendant.

ORDER

REVERCOMB, District Judge.

The plaintiff, a manufacturer of magnets, brought this suit to have the Court declare invalid certain important magnet patents granted to the defendant. The defendant counterclaimed for a declaratory

---

judgment and an injunction to prohibit infringement of its patents. The Court on July 28, 1989 heard oral argument on the defendant/counterclaimant's motion for a preliminary injunction. Because the Court concludes that the equitable factors that must be considered in an application for a preliminary injunction weigh heavily in favor of the plaintiff/counterdefendant, the Court denies the motion.

### I. The Facts

The patents of defendant/counterclaimant Sumitomo Special Metals Co. ("SSMC") are for processes that it says have "revolutionized" magnet production. The processes enable manufacturers to produce magnets of unprecedented power at no more expense than that of previous state-of-the-art magnets, SSMC states. SSMC maintains that in the early 1980s it discovered a method of combining iron, boron, and various "rare earth" elements into magnets that are better than samarium-cobalt magnets, which previously had been the strongest magnets available. The iron, boron, and rare earth magnets have the added advantage of being made of elements that are more readily available than samarium or cobalt. .

The processes in SSMC's patents involve "sintering," a conventional technique by which the metals are reduced to a powder, compacted, and heated to a temperature just below the melting point, at which the physical and magnetic properties of the metals begin to change. SSMC's Memo. at 3–5. SSMC's discoveries, it maintains, include factors such as the proper mix of the metals, the temperature to which the powder must be heated, and the type of atmosphere needed for sintering. SSMC's Memo. at 5–6. The first SSMC patent, issued on July 1, 1986, included all of these factors; later refinements and discoveries were the bases of additional patents.

SSMC manufactures its own magnets in Japan, but has chosen, as it may, to license the production rights to other companies.

In the past few years nine large manufacturers—General Motors, Philips' Gloeilampenfabrieken, IG Technologies, Vacuumschmelze, Krupp Widia, Aimants Ugimag, Shin–Etsu Chemical, TDK, and Hitachi Metals—each have signed contracts to pay SSMC for the right to produce and sell the patented magnets.

Plaintiff/counterdefendant Crucible Materials Corp. ("Crucible") has not purchased the right to make magnets covered by SSMC's patents, despite some negotiations between the two. Instead, Crucible chose to produce magnets that are admittedly covered by SSMC's patents [1] and, with this suit, to challenge the validity of the patents in court. SSMC states that it has not taken action to enjoin Crucible from infringing on its patents during the past three years because (1) it was focusing its legal efforts on a dispute with General Motors concerning the patents and (2) it hoped to reach some sort of accomodation with Crucible. When Crucible filed this suit, SSMC counterclaimed to enjoin Crucible.

### II. The Legal Standard

■ The standard for granting an injunction prohibiting patent infringement is no more stringent or lenient than that in other civil suits. *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387 (Fed.Cir.1987). Indeed, federal patent law explicitly provides broad equitable discretion for judges to "grant injunctions to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. When a party applies for a preliminary injunction in a patent case, the Court should consider four factors: (1) whether the applicant has shown a reasonable likelihood of success on the merits; (2) whether it has shown that it will suffer irreparable harm without the injunction; (3) whether the balance of hardships tips in its favor; and (4) what effect an injunction would have on the public interest. *See, e.g., Hy-*

---

1. Crucible challenges SSMC's allegation of infringement of claim 3 of SSMC's '938 process patent, but admits "for purposes of the prelimi-

nary injunction motion only" that its products infringe on SSMC's other patent claims. Crucible's Memo. at 26–27.

*britech Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1451 (Fed.Cir.1988).

### III. Likelihood of Success on the Merits

■ The Court concludes that, at this stage in the litigation, SSMC has shown a reasonable likelihood of success on the merits.

■ Patents granted by the United States Patent and Trademark Office ("PTO") are presumed valid until proven otherwise. 35 U.S.C. § 282. A challenger must prove invalidity by clear and convincing evidence. *Ryco, Inc. v. Ag–Bag Corp.,* 857 F.2d 1418, 1423 (Fed.Cir.1988). Courts naturally must start with the presumption that the PTO, which holds expertise in the field, has made a reasonable decision in granting an exclusive right to use of an invention. *See, e.g., American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984).

The validity of SSMC's patents is further bolstered by the fact that nine leading manufacturers, including General Motors and European and Japanese companies, have apparently acquiesced to SSMC's patent and have agreed to pay SSMC for a license to make magnets covered by the patents. Such acquiescence is naturally strong evidence that industry experts view the patent as justifiable. *See Eli Lilly and Co. v. Premo Pharmaceutical Laboratories, Inc.,* 630 F.2d 120, 136 n. 73 (3rd Cir.) (dictum), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980); *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.,* 436 F.2d 1180, 1187 (7th Cir.), *cert. dismissed,* 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971).

Crucible argues that the patent will be declared invalid because the processes patented by SSMC fit into the "obviousness" exception in patent law, which prohibits patents from being issued to matter that "as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. Pointing out that "sintering" was a decades-old process in magnet-making and that the combination of iron, boron and rare earth elements was already used in at least one existing magnet patent, Crucible maintains that sintering these metals would have been obvious to those in the field at the time. Moreover, Crucible notes that the existence of the previous iron, boron, and rare earth patent was not considered by the PTO examiner, but may be considered by this Court. *See Aktiebolaget Karlstads Mekaniska Werkstad v. United States International Trade Commission,* 705 F.2d 1565, 1577 (Fed.Cir.1983) (new evidence of prior art may help overcome presumption of validity).

SSMC counters these points, however, by noting that technical works written at the time and by authors cited by Crucible's own expert maintained that sintering the elements in the SSMC patents at a high temperature would *not* produce a high quality magnet. SSMC's Reply Memo. at 4–5 (citing Yelon Decl. ¶¶ 13–26). SSMC further argues that simply because a particular method was known and the ingredients were known does not mean that making an invention using these particular ingredients in this particular method is "as a whole obvious" under patent standards. Obviousness in hindsight is not the test. *Graham v. John Deere Co.,* 383 U.S. 1, 36, 86 S.Ct. 684, 703, 15 L.Ed.2d 545 (1966); *W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1553 (Fed.Cir.1983), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

Accordingly, the Court at this time believes that SSMC has shown a reasonable likelihood of success on the merits.[2] SSMC has shown the existence of the patent, scientific support for the issuance of the patent, and the acquiescence of competitors, while Crucible has not at this point convinced the Court by clear and convincing

---

**2.** Because this case will involve a fairly complicated evaluation of the state of the scientific evidence at the time the patent was granted, the Court notes that it may be convinced by Crucible at the final resolution of this case that its initial evaluation was incorrect and that the patents should be declared invalid.

evidence that the patent is invalid because of "obviousness" or other means.

## IV. Irreparable Harm, Balance of Hardships, and Public Interest

Although the Court has concluded that SSMC has shown a reasonable likelihood of success on the merits, such a showing does not alone make a permanent injunction justified. If likelihood of success dominated the other factors, nearly every suit could have a party successfully applying for a preliminary injunction. Rather, a court should also ask whether the "equitable" factors—irreparable harm, the balance of the hardships, and the public interest—justify the extraordinary step of a preliminary injunction. In this case, the Court finds that the equitable factors weigh against granting a preliminary injunction and lead the Court to conclude that an injunction is not warranted.

It is undeniable that the ability to get a permanent injunction is an essential part of the right to a patent, which is established in the Constitution. U.S. Const. art. I, § 8. SSMC points out that Crucible's infringement of its patents both costs it lost income and hurts its ongoing ability to license magnets. *See Hybritech*, 849 F.2d at 1456–57 (permanent injunctions, not monetary relief, are desirable in patent cases); *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed.Cir.) (infringement may establish irreparable harm), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). SSMC also argues that the Court's refusal to grant an injunction would encourage other infringers and would be unfair to those companies that already have purchased licenses from SSMC.

The Court believes, however, that there are a number of persuasive reasons for denying the preliminary injunction and waiting until the parties have argued their cases fully before deciding whether to grant a permanent injunction. First, most of the cases supporting injunctions in patent cases have come *after* an adjudication of the validity of the patent, unlike the instant case. Second, by delaying in applying for an injunction until three years after Crucible began to infringe, SSMC has belied its argument that its ongoing injury is truly irreparable. *See, e.g., Tennant Co. v. Hako Minuteman Inc.*, 651 F.Supp. 945, 961–62 (N.D.Ill.1986) (delay proves no irreparable harm, which may outweigh likelihood of success); *Rexnord, Inc. v. Laitram Corp.*, 628 F.Supp. 467, 473–74 (E.D. Wis.1986) (failure to promptly move for an injunction is fatal to contention of irreparable harm). While SSMC points out that it delayed because of a dispute with General Motors and because of the hope of a successful negotiation with Crucible, *see Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544, 1552–53 (Fed.Cir.1988) (involvement in other litigation may excuse patentee from laches), the point is not that SSMC should be barred by laches for the delay; the point is that the delay shows that the situation is not so urgent or emergent that a preliminary injunction should be issued.

Second, the Court finds fault with SSMC's argument that monetary damages for infringement between now and the date of a possible permanent injunction would be inadequate. SSMC is in the business of selling licenses to other manufacturers—it routinely contracts away its right to exclusivity in return for money. While this point does not mean that SSMC would not be entitled to a permanent injunction, it does argue significantly against SSMC's point that infringement for a limited period of time cannot be remedied by money damages. *See T.J. Smith & Nephew Ltd. v. Consolidated Medical Equipment, Inc.*, 821 F.2d 646, 648 (Fed.Cir.1987) (licensing argues against claim of irreparable harm).[3] Similarly, because eventual success on the merits for SSMC would probably involve the calculation of monetary damages against Crucible for its years of infringement before this suit, SSMC is incorrect in maintaining that such a calculation would

---

**3.** In addition to other points, the existence of licensing means that there is a lesser effect on employment at the patent holder than there otherwise would be.

be unnecessary if a preliminary injunction were granted.

Both parties allege correctly that their operations would be hurt by an adverse decision from the Court. If the Court grants the injunction, Crucible argues that employment at its plant would be endangered. SSMC naturally counters by pointing out that its work force, as well as those of its licensees, are injured by the continuing infringement. In addition, the patent holder argues that Crucible is underselling the licensees because Crucible, unlike the other manufacturers, does not have to pay the licensing costs. SSMC also notes that it is willing to give Crucible a license to make the patented magnets.

In sum, the Court concludes that the balance of hardships factor tips in favor of Crucible, if only because a preliminary injunction would disrupt the expectations of the parties—including Crucible and those who have contracted with it—before this lawsuit was filed. A preliminary injunction only a few months after the suit was filed would likely cause significant disruption—probably more than would be caused by a permanent injunction, which would come after all concerned parties have had a chance to prepare. Moreover, if the permanent injunction were lifted at the final disposition of this case, the case would have resulted in two unnecessary periods of adjustment for all concerned.

Finally, the Court concludes that the public interest, if it is affected at all by this decision, would be helped by maintaining the status quo while this case awaits its final resolution.[4] While Crucible argues that important military contracts for magnets could be endangered by an injunction, SSMC points out that the Court cannot prevent Crucible from selling to the government, 28 U.S.C. § 1498(a), and that the American licensees could fill in the gap. Again, the Court concludes that the only likely significant effect on the public interest would be a potential disruption of expectations if the preliminary injunction were issued.

## V. Conclusion

The Court concludes that, despite a showing of a reasonable likelihood of success on the merits, SSMC has not provided convincing evidence that the extraordinary remedy of a preliminary injunction is justified in this case. SSMC has lived with having Crucible infringe on its patents for three years and has taken advantage of its patent rights through licensing, both of which belie its claim that money damages from Crucible would be insufficient to prevent it from suffering irreparable harm. Finally, the Court finds that the balance of hardships and the public interest, if they tip either way in this case, tip in favor of denying the preliminary injunction. In sum, the Court concludes that justice would be served by denying the preliminary injunction and proceeding toward the final resolution of this case on the merits.

Accordingly, it is

ORDERED that the defendant/counterclaimant's motion for a preliminary injunction is DENIED.

---

4. Much of SSMC's argument on the balance of hardships and public interest is based on the contention that Crucible is being unjustly enriched, and SSMC is unjustly impoverished, by Crucible's infringement. These arguments presuppose the validity of SSMC's claims, however; each of the arguments would be reversed if the merits go the other way. Indeed, some of Crucible's arguments also suffer from this defect. A court should balance the hardships and evaluate the public interest without presupposing the merits, which are, after all, a separate factor.