**MAXIM'S LIMITED,**
**Plaintiff-Appellant,**

v.

**George BADONSKY, d/b/a Maxim's Restaurant, Defendant-Appellee.**

**No. 84–2879.**

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1985.

Decided Sept. 12, 1985.

Rehearing Denied Oct. 11, 1985.

---

David H.T. Kane, Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City, for plaintiff-appellant.

Charles A. Laff, Laff, Whitesel, Conte & Saret, Chicago, Ill., for defendant-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and PECK, Senior Circuit Judge.*

CUDAHY, Circuit Judge.

In 1963 Astor Tower Restaurant, Inc., a Chicago firm, solicited the agreement of Louis Vaudable of Paris to allow Astor Tower to use the name "Maxim's de Paris" for a Chicago restaurant. The facts surrounding the agreement are less than clear in the record. Vaudable apparently owned Maxim's in Paris, perhaps in partnership with Societe Investissement Commercial et Hotelier, S.A. (SICH).

The use of the mark in Chicago evidently benefited the Chicago restaurant. Under the agreement Astor Tower paid certain "royalties" for the use of the name, and Vaudable and SICH agreed to provide consulting services. It is not clear from the record whether Vaudable or SICH had asserted any legal right to control the use of the mark "Maxim's" in this country, or whether the agreement was entered into primarily to give the impression that the Chicago restaurant was in some way connected with the Paris restaurant. Certainly other restaurants in this country have used the name and even the typescript used by the Paris restaurant in its signs, and used them with impunity. For example, the Maxim's in Houston, Texas is a nationally advertised French restaurant; the menu of that establishment carries a wine known as "Caves de Maxim's," which is provided by the plaintiff in this case. The Houston restaurant has been in existence for thirty-five years, and its use of the name has never been licensed by the plaintiff or by anyone else.

---

* The Honorable John W. Peck, Senior Circuit Judge for the Sixth Circuit is sitting by designation.

In any event, in 1977 Astor Tower renegotiated the agreement with Maxim's Limited, plaintiff in this case. Maxim's Limited, at that time was owned by Vaudable and SICH; later Vaudable sold his share to the present owner, Pierre Cardin. It has not been made clear in the record what rights, if any, Maxim's Limited, had in either the Paris restaurant or the name "Maxim's." Plaintiff assures us that it is the owner of various U.S. Patent and Trademark Office registrations for "Maxim's" and "Maxim's de Paris" covering foods, wine and a variety of other products; the record shows only a registration covering frozen foods and sauces.

Whatever rights there were under the 1977 agreement were not assignable. The agreement provided that Astor Tower would not contest Maxim's Limited's right to the mark during the life of the contract. It also provided that Maxim's Limited, would make yearly inspection visits to Chicago, to be paid for by Astor Tower; defendant claims, however, that plaintiff neglected the agreement, and that the only contact between the plaintiff and the Chicago restaurant was a phone call and one visit by some guests of Vaudable. Astor Tower apparently stopped paying fees in 1980 or 1981. In 1981, some time after Pierre Cardin had acquired Maxim's Limited, that firm told the press that there was no Maxim's de Paris in Chicago. Astor Tower responded vigorously, insisting that the Chicago restaurant was alive and well, and a "lawfully authorized licensee." [1]

In 1982 the Chicago restaurant closed. In May, 1984, defendant George Badonsky purchased from Astor Tower the building in which the Chicago restaurant had been located, along with the restaurant's goodwill. Badonsky renovated the restaurant and announced his intention to reopen it as Maxim's. This suit followed. At some point Badonsky decided that the full name would not be "Maxim's de Paris" but rather "George Badonsky's Maxim's on Astor Street." Maxim's Limited, argued before the district court that it had a common law right to exclusive use of the name "Maxim's" for a restaurant, and requested an injunction against the use of that name by Badonsky. The day after filing its complaint, Maxim's Limited, moved for a preliminary injunction, and it is from the denial of the preliminary injunction that it now appeals.

■■■ The decision to deny a preliminary injunction is within the discretion of the trial court, and will not be disturbed except for an abuse of that discretion. *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 390–91 (7th Cir.1984) (as amended); *Wesley-Jessen Division v. Bausch & Lomb, Inc.*, 698 F.2d 862, 864 (7th Cir.1983). The district court must weigh four factors in deciding whether to grant or deny the injunction: (1) whether there is an adequate remedy at law (that is, whether interim harm caused by the activity to be enjoined can be completely offset by a subsequent award of damages or other legal relief); (2) whether any such irreparable harm to the plaintiff caused by a failure to enjoin the activity outweighs irreparable harm to the defendant caused by an injunction; (3) whether the plaintiff has some likelihood of success on the merits; and (4) whether grant of the injunction would disserve the public interest. *Wesley-Jessen, supra*, at 864. These factors are to be balanced, one against the other, so that

---

**1.**                                    December 28, 1981

Mr. Boujalt
76 Rue Faubourg, St. Honoré
Paris, FRANCE 75008
Dear Mr. Boujalt:
    We represent Astor Tower Restaurant, Inc., holder of a license to operate a Maxim's de Paris in Chicago.
    We read in the press that Pierre Cardin purchased Maxim's or has obtained licensing rights in that name. In addition, we read that Pierre Cardin, or his representatives, have repeatedly informed the press that there is no Maxim's de

Paris in Chicago. Such a statement is simply not true and is detrimental to my client's business. We expect that such statements will cease and Mr. Cardin will acknowledge the Chicago Maxim's as a lawfully authorized licensee.
    As a famous American humorist once said: "News of my demise is greatly exaggerated." At present, we respond with a smile, but we will not continue to if such comments persist.

                          Yours very truly,

                          /s/ Harold C. Hirshman
                          Harold C. Hirshman

where harm to the plaintiff significantly outweighs the harm to the defendant, and the legal remedy would not be adequate, less of a likelihood that plaintiff will prevail is required. Our review is a deferential one, and although we are not limited to determining whether the action of the trial court is without basis in reason, *Roland Machinery, supra,* at 390, neither may we replace the district court's judgment with our own, *id.*

The district court refused the preliminary injunction largely on the ground that Maxim's Limited, had not established a fairly clear-cut probability of success at trial on the merits. On appeal plaintiff argues that the district court has this factor wrong, and that all that is required is *some* likelihood of success. Plaintiff cites *Roland Machinery, supra,* at 387: it suffices that " 'plaintiff's chances are better than negligible ...' " (citing *Omega Satellite Products Co. v. City of Indianapolis,* 694 F.2d 119, 123 (7th Cir.1982)). In the very next paragraph of *Roland Machinery,* however, we said that the necessary likelihood of success varied inversely with the excess of irreparable harm on the plaintiff's side. *Roland Machinery, supra,* at 387. If the balance of harms tips toward the plaintiff, but only slightly, then a greater likelihood of prevailing is required; if the balance tips toward the defendant, of course, the injunction must be denied, whatever the plaintiff's chance of winning on the merits. Thus the trial court would be right to require a fairly clear-cut probability of success if he did not find that harm to the plaintiff outweighed harm to the defendant to a significant degree. Here it found neither a clear-cut probability

of success nor a balance of harms in plaintiff's favor.[2]

The trial court found less than a clear-cut probability of success primarily because it was not clear whether plaintiff owned the mark, and because there was a fair chance, even if an interest could be established, that that interest had been abandoned by 1982. Maxim's Limited, has not registered the mark "Maxim's" as a name for restaurants and relies on a "common law" right; but Maxim's Limited, has not even established ownership of, or interest in, the Paris restaurant (indeed, it rather persistently skirts the issue of that relationship in its briefs). Moreover, there is evidence which suggests that even if Maxim's Limited, had owned the mark, it abandoned it for restaurant use prior to 1982.

■ The plaintiff insists that under 15 U.S.C. § 1125(a) proof of ownership is not necessary to establish standing. But ownership, or some other lesser right, is necessary to control the use of the name, and thus the lack of evidence of such a right is relevant to the question of the probability that the plaintiff will prevail at trial.[3]

The trial court must rely on the evidence before it in determining whether to grant a preliminary injunction, and we agree with the court that on the evidence now in the record, the chance of Maxim's Limited's proving an interest in the mark—and therefore its chance of prevailing on the merits—is not demonstrably very great.

If Maxim's Limited, is to win the preliminary injunction, therefore, it would have to impress the trial court with the amount by which the harm that threatens it (if there is no injunction) exceeds the harm threatening the defendant (if there is an injunction);

---

**2.** For the purposes of the request for a preliminary injunction the trial court accepted the representation of Badonsky that the name of the restaurant would not be "Maxim's de Paris" or "George Badonsky's Maxim's de Paris," but rather "George Badonsky's Maxim's on Astor Street." The denial of the injunction was premised on that representation.

**3.** Plaintiff points to the licensed use of the name by a restaurant being built in New York. But

the interest that arises out of the desire to protect the licensed use of the name by the New York restaurant is enforceable only if plaintiff had some prior right to license the use of the name. If Maxim's Limited, were infringing on someone else's right to use the name, or if no one had the right to limit the use of the name, the fact that it had licensed the use of the name in New York would not create an enforceable interest.

for since the court determined that the chances of prevailing were slim, the balance of harms would have to lean rather obviously toward plaintiff's side to make a preliminary injunction appropriate. Specifically, the harm to the plaintiff, discounted by its chance of prevailing, must exceed the harm to the defendant discounted by *his* chance of prevailing.

Maxim's Limited argues that in a case of this sort, irreparable injury is assumed. *See Processed Plastic Co. v. Warner Communications, Inc.,* 675 F.2d 852, 858 (7th Cir.1982). Although we agree that there is such a presumption, the significance of that fact is rather minimal; for what is necessary is that whatever irreparable injury there is to the plaintiff *outweigh* the injury to the defendant—in this case, outweigh it by a substantial margin. The trial court considered the harm that could be done, and, in light of the plaintiff's questionable chance of winning, denied the preliminary injunction.

■ Certainly the denial was no abuse of discretion. For one thing, the defendant stood to lose a good deal if the injunction was granted, and merely winning at trial would not undo that harm. Badonsky sees an advantage to using the name "Maxim's;" he would not be in court otherwise. If he is deprived of that advantage during the period when his restaurant is becoming established, a period during which litigation may drag on for years, he may never fully recover from the set-back. Expensive restaurants soon establish their own reputations, but even for expensive restaurants there is an advantage—though as we will see less of an advantage than in the case of other products—to starting out with an established name (a name which Badonsky may not be entitled to use: but that is a question of who will prevail on the merits). Where the plaintiff has a less than clear chance of prevailing on the merits, it would be unfair to deprive him of that advantage unless the dimensions of the harm to the plaintiff in the absence of an injunction would be extraordinary.

But no such extraordinary harm is threatened in this case. It is generally assumed that placing a mark in someone else's control is per se an injury to the plaintiff even if the infringer's product is of as high a quality as the plaintiff's product. But the extent of that harm will vary with the product and the sophistication of the market for that product. It is the possibility of confusion that places the value of the plaintiff's use of a mark within the control of an infringer, whatever the quality of the infringer's product; and where there is little chance of confusion, the harm will be minimal. In the case of expensive restaurants the likelihood of confusion is rather low.

In contrast, the owner of a fastfood chain might not be so willing to make an investment in cleanliness and quality if he could not restrict use of the name—that is, if the public could not distinguish between his restaurants and others. The clientele for the sort of restaurant in question in this case, we think, tend to depend less on the name and more on individual determinations based on experience and individual reputation. Customers are more likely to be aware of the ownership of such restaurants, and more likely to be able to distinguish different restaurants in different locations, whatever the name and whoever the owner. Thus restaurants in different locations, with different names but owned by the same entity, may start out with a presumption of similarity but acquire different reputations. Restaurants of the same name but owned by different entities, when they are in this class, may also begin with a presumption of similarity (as we have seen); they are virtually certain, however, to acquire different reputations. A restaurant guide will not judge the quality of the Chicago Maxim's by the quality of the Paris Maxim's or the New York Maxim's, or vice versa; and the reputations of expensive restaurants are largely made by critics and guides. When a traveler visits a McDonald's in Cincinnati, on the other hand, he is unlikely to consult a guide; he relies on the reputation McDonald's has

acquired, its advertising and his experience elsewhere.

And in general, where "the cost of the defendant's trademarked product is high, the courts assume that purchasers are likely to be more discriminating than they might otherwise be." J. Gilson, Trademark Protection and Practice § 5.08 (1985). *See also E-Systems, Inc. v. Monitek, Inc.,* 720 F.2d 604 (9th Cir.1983) (nuclear instruments); *Astra Pharmaceutical Prods., Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201 (1st Cir.1983) (blood analyzer machines); *Pignons S.A. v. Polaroid Corp.,* 657 F.2d 482 (1st Cir.1981) (cameras); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 627 F.2d 628 (2d Cir.1980) (clothing). Moreover, we have held that where the product involved was a low value item, the risk of confusion is greater "because purchasers are unlikely to complain when dissatisfied, which would bring to light confusion; but rather they are likely simply to avoid all products produced by the company which they believe produced the product which caused the trouble." *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 383 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

Where marks are identical, of course, sophistication as a factor in determining likelihood of confusion is less significant. *Grotrian, Helfferich, Schulz, et al. v. Steinway and Sons,* 523 F.2d 1331 (2d Cir.1975); *see also Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609 (7th Cir.1965) (use of same name in same style, with no distinguishing features); *Stork Restaurant v. Sahati,* 166 F.2d 348 (9th Cir.1948) (use of monocled stork on one leg in advertisement for bar). But here the

marks (on the assumption on which the denial of the injunction was predicated, that the Chicago restaurant will be called "George Badonsky's Maxim's on Astor" and not "Maxim's de Paris") are quite distinguishable.[4]

Thus Badonsky, while he does threaten confusion, does not threaten the same sort of confusion that might arise elsewhere; accordingly, he does not exercise the same degree of control over the value of the name. This is not a black and white difference: the harm to Maxim's Limited—and we do not doubt that some harm there will be—is somewhat less because of the sophistication of the clientele. Since other harms it will suffer, such as the interim loss of licensing fees and the inability to license the mark to other restaurants, can be remedied if Maxim's Limited, should prevail at trial, and need not be remedied if they do not, the possible harm to its reputation is the extent of the irreparable harm it will suffer. Common sense suggests that the possible harm to the reputation of the Paris restaurant of allowing the Chicago restaurant to use the name (especially given the number of restaurants in this country that already use the name) is outweighed by the harm to defendant of not allowing him to use the name, together with the associations acquired by the name during the period when the Astor Tower restaurant was in existence. Thus the district court was right to require a "fairly clear-cut" probability of prevailing at trial.

Since the district court has not abused its discretion in finding that the prospective balance of harms in plaintiff's favor was not sufficient to offset the lack of a clear cut probability of success, we affirm the denial of a preliminary injunction.

---

**4.** In *Stork Restaurant,* a case involving the well-known New York night club and a small San Francisco bar, the Ninth Circuit held that the law "protects not only the intelligent, the experienced, and the astute. It safeguards from deception also the ignorant, the inexperienced, and the gullible." 166 F.2d at 359. The question is one of degree, however; and where the clientele for two restaurants is made up primarily of the experienced (and the "worldly"), the chance of confusion is concededly less. The

patrons of a small San Francisco bar may well need more protection than the clientele of a Chicago restaurant charging $100 per person (or more) for a meal. Similarly, in *Tisch Hotels* we granted a permanent injunction against using the name "Americana" for a hotel. In that case we found a significant chance of confusion; and indeed the infringing hotel had, unlike the restaurant in this case but like the bar in *Stork Restaurant,* adopted the precise trademark and logo of the plaintiff.