In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1173

Bliss Salon Day Spa,

Plaintiff-Appellant,

v.

Bliss World LLC,

Defendant-Appellee.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 C 2344--Joan Humphrey Lefkow, Judge.

Argued September 7, 2001--Decided October 4, 2001

   Before Bauer, Easterbrook, and Manion,
Circuit Judges.

   Easterbrook, Circuit Judge.  Both parties
to this suit use the mark Bliss in
connection with beauty salons and beauty-
care products, such as shampoo. Bliss
Salon is the senior user between the two,
having opened in 1979 its one and only
outlet in Wilmette, a suburb of Chicago.
Bliss World adopted the mark in 1996 when
it opened Bliss Spa in the Soho district
of New York. It has set out to create an
international chain of beauty parlors,
also selling Blissout and Blisslabs products
in retail outlets such as Saks Fifth
Avenue, by catalog, and through a web
site. Bliss World registered its marks in
1997 for use in connection with spas and
beauty-care products, a step that Bliss
Salon neglected; it is uncontested that
Bliss World adopted the mark without
knowledge of Bliss Salon's prior use.

   In this action under sec.43(a)(1)(A) of
the Lanham Act, 15 U.S.C.
sec.1125(a)(1)(A), Bliss Salon seeks an
injunction that would forbid Bliss World
to open a beauty parlor, or sell any of
its products, within 100 miles of
Chicago's Loop. The district court denied
Bliss Salon's motion for a preliminary
injunction, 2000 U.S. Dist. Lexis 18871
(N.D. Ill. Dec. 22, 2000), and on this
appeal Bliss Salon has all but ignored

the deference accorded by an appellate court to a decision about preliminary relief. See Maxim's Ltd. v. Badonsky, 772 F.2d 388, 390 (7th Cir. 1985); Ty, Inc. v. Jones Group, 237 F.3d 891, 896 (7th Cir. 2001). Plaintiff sealed its fate by making an outlandish demand: Milwaukee, Rockford, Gary, and South Bend all are part of the 31,416 square miles that lie within 100 miles of the Loop, yet few residents of these cities are likely to know about a one-store operation to the northwest of Chicago, so there is only slight risk that goods offered by Bliss World will be mistaken for the products of Bliss Salon. (Unless Bliss Salon itself causes the confusion. For seven months Bliss Salon printed the url of Bliss World's web site on its own price lists and business cards, and in an instance of cybersquatting plaintiff registered the domain name "blissdayspa.com", the name of defendant's flagship outlet, while omitting the word "salon" that distinguishes the two firms.) The risk of confusion between Bliss World and Bliss Salon is low even near Chicago, because many other firms in the beauty industry (at least one in Chicago, perhaps ten within the 100-mile radius, and a few with national distribution) use Bliss as a mark for some of their wares. This may make it hard to employ Bliss as a designation of source for any product; it makes it all but impossible to imagine that a consumer seeing the mark Bliss would assume that the product or service must come from Bliss Salon Day Spa of Wilmette. And without a likelihood of confusion about source, there is no claim under sec.43(a)(1)(A) of the Lanham Act.

At oral argument plaintiff's counsel invited us to cut the radius from 100 miles to 25 (a mere 1,963 square miles), but this is not the right forum; our task is to decide whether the district judge abused her discretion, not to make an independent decision about appropriate relief. And a smaller radius would do Bliss Salon no good, at least on this record. So far as the record reveals, not a single customer has ever expressed confusion about source, returned one of Bliss World's products to Bliss Salon seeking a refund, or complained to Bliss Salon about the high prices in Bliss World's catalog. Bliss Salon has not conducted a survey or offered any other

means by which the district court could infer a likelihood of confusion in the future.

Instead Bliss Salon argues that it is entitled to relief without the need for evidence, because the word "bliss" is "suggestive," and all "suggestive" marks are protected automatically, without need to prove secondary meaning or likely confusion. "Bliss" is not generic, and it does not describe any attribute of hair styling or shampoo. Emotions are not product attributes; if one could achieve "bliss" by washing one's hair many religious leaders and psychoanalysts would be out of business. Thus the word must be "suggestive," and a suggestive mark creates an entitlement to protection from usurpers, the argument wraps up.

That is itself a misleading (confused?) statement of trademark law. Section 43(a)(1)(A) provides relief only when another person's use of a mark "is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person". Proof of likely confusion about source is a statutory requirement. Judge Friendly proposed the continuum of generic, descriptive, suggestive, arbitrary, and fanciful marks as a heuristic, a means to guide thought rather than to replace the statutory requirements. See Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9-11 (2d Cir. 1976). Suggestive ("Tide" laundry detergent), arbitrary ("Apple" computers), and fanciful ("Exxon" gasoline) marks collectively are distinctive in the sense that secondary meaning is likely to develop, as a result of which any duplicate use of the name is likely to breed confusion about the product's source. Generic marks, on the other hand, designate the products themselves rather than any particular maker, and descriptive marks might (but usually won't) acquire distinctiveness. Wal-Mart Stores, Inc. v. Samara Brothers, Inc., 529 U.S. 205, 212-13 (2000), approved this general approach (and applied it to trade dress) while insisting that marks actually be distinctive if they were to qualify for the "inherently distinctive" category.

A court cannot choose between the

"descriptive" and "suggestive" categories on the basis of a dictionary; Judge Friendly's continuum is functional, and placement must be functional too. This is why we held in Platinum Home Mortgage Corp. v. Platinum Financial Group, 149 F.3d 722, 730 (7th Cir. 1998), that the word "platinum" is descriptive rather than suggestive in the financial-services industry. Platinum, like the phrase "gilt-edged," suggests high quality or elegance, and issuers of credit cards or mortgage loans may choose it because of the association with the upper crust; in this linguistic sense the word is suggestive. But because so many firms use the word (and the color) for financial products, it cannot be inherently distinctive; quite the contrary, it is no more distinctive than a "gold card" or "born with a silver spoon in his mouth." Functionally, therefore, the word had to go in the descriptive category. "Tide" detergent is linguistically suggestive (it suggests the cleansing action of water), but this mark is and remains legally suggestive only because it has retained distinctiveness as a product identifier. Bliss marks are a glut on the market in hair styling and beauty care. They are not distinctive, so the word does not belong in the "suggestive" cubbyhole. If Bliss Salon wants to get anywhere in this litigation, it will have to prove that its mark has acquired secondary meaning and that Bliss World's use of the same mark is likely to cause confusion about source in or near Wilmette. See Sunmark, Inc. v. Ocean Spray Cranberries, Inc., 64 F.3d 1055 (7th Cir. 1995); cf. Zaz Designs v L'Oral, S.A., 979 F.2d 499 (7th Cir. 1992).

Affirmed