**In re FAS MART CONVENIENCE STORES, INC., et al., Debtor.**

**Keith L. Phillips, Chapter 11 Trustee for Fas Mart Convenience Stores, Inc., et al., Plaintiff,**

**v.**

**McLane Company, Inc., Defendant.**

Bankruptcy No. 01–60386.
Adversary No. 02–06140.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

July 1, 2002.

---

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

This matter came before the Court on the emergency motion of Keith L. Phillips, the duly appointed Chapter 11 Trustee for the above-captioned debtors, for entry of a temporary restraining order enjoining McLane Company, Inc., from breaching its obligations under a Distribution Service Agreement dated July 1, 1999, as modified

by prior orders of this Court. The temporary restraining order was requested pending a preliminary hearing on the Trustee's Complaint for Injunctive and Other Relief, styled *Phillips v. McLane Company, Inc.*, Adversary Proceeding No. 02–06140.

Upon consideration of the motion and all responses and objections, the statements of counsel at the hearing, evidence adduced at hearing, and any other evidence or documents filed in response to, or in support of the motion, the court finds that there exists just cause to grant Trustee the requested relief in the form of a temporary restraining order.

### Parties.

Fas Mart Convenience Stores, Inc., is a corporation organized and existing under the laws of the Commonwealth of Virginia and is the chapter 11 debtor in these cases. Together with its debtor affiliates and subsidiaries, Fas Mart is engaged in the business of operating convenience stores and gas stations located in four states in the Mid–Atlantic region.

Defendant McLane Company, Inc., is a Texas corporation, that engages primarily in the business of wholesale distribution of food and general merchandise products to retailers throughout the United States.

### Statement of Facts.

On March 9, 2001, debtors filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. On the petition date, the Court entered an order directing that these cases be consolidated for procedural purposes only and administered jointly. By order dated May 3, 2002, the Court directed the United States Trustee to appoint a Chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code.

On May 13, 2002, the United States Trustee filed a notice informing the Court that Mr. Phillips had been selected to act as the Trustee for debtors' businesses. The Trustee continues to manage debtors' property and operate debtors' business pursuant to section 1108 of the Bankruptcy Code. Since his appointment, Trustee has endeavored to sell the operating assets of debtors and currently has two offers.

As of the petition date, debtors operated approximately 170 convenience stores located in four states in the Mid–Atlantic region and employed approximately 1,600 employees. Debtors' business had grown from a single store in 1991 to the 170 stores on the petition date primarily through various acquisitions financed by the BayView Franchise Mortgage Acceptance Corporation (FMAC). Each of the stores generally sells branded gasoline, as well as beer, wine, tobacco products, lottery tickets, money orders, food items and other convenience items. The majority of the stores are leased from third parties unrelated to debtors, although various debtor entities own fee title to approximately sixty of the store locations.

In addition, debtors supply fuels to a number of third party dealer locations which are operated by independent gasoline retailers. In certain instances, debtors own the sites at which dealers operate under leases, and in others, the debtors lease the sites at which dealers operate under sub-leases.

On or about July 1, 1999, debtors entered into a Distribution Service Agreement (agreement) with McLane. Under the terms of the agreement, debtors agreed to purchase from McLane "*all* of [debtors'] requirements of wholesale food and non-food/general merchandise products customarily supplied by convenience food wholesalers" throughout the five-year term of the agreement. Agreement § 1.3.

To facilitate debtors' purchase of the inside-sales inventory, McLane agreed to provide debtors inventory financing equal to $25,000.00 per store, or $4.225 million in total. *Id.* at § 4.2. The inventory financing was evidenced by a sixty month promissory note and security agreement granting to McLane a security interest in the inside-sales inventory sold to debtors. As of the petition date, debtors owed McLane approximately $4.1 million on account of the inventory financing note.

The agreement provided a pricing structure whereby McLane would sell the inside-sales inventory to debtors at the manufacturer's published list price on the date of delivery, together with a specific percentage mark-up for each category of items agreed upon by debtors and McLane, plus any applicable freight charges. *Id.* at § 1.4. Additionally, when calculating the cost of the inside-sales inventory, McLane was not required to give effect to any cash or volume discounts or rebates it received from manufacturers. *Id.*

An additional component of the pricing structure, and the issue at hand, is a "service allowance" equal to $300.00 per month, per store for the term of the agreement. Under the agreement, the service allowance is to be paid in two installments in advance. *See id.* at § 4.2. The first installment of the service allowance for the first thirty-six month term of the agreement, aggregating approximately $1.825 million, was paid on or about the date the agreement was executed by the parties. The second installment of the service allowance, totaling approximately $1.217 million, is due on July 1, 2002. *See id.* at Ex. C.

McLane has an unpaid pre-petition claim against debtors totaling approximately $6 million for inventory purchased pursuant to the agreement. On the petition date, McLane presented to debtors a reclamation demand for goods provided to debtors in the amount of approximately $2.4 million. McLane also filed objections to several of the motions for relief filed by debtors on the petition date.

To resolve the issues related to the reclamation demand and the objections, debtors and McLane entered into a settlement agreement that was subsequently approved by the Court by order dated October 31, 2001 (settlement order). The settlement order modified certain terms of the agreement, including the credit terms to be extended by McLane to debtors with respect to debtors' orders of inside-sales inventory. The settlement order does not address McLane's obligation to pay the second installment.

Since the petition date, debtors have fully complied with their obligations under the agreement and the settlement order. McLane has recently informed the Trustee and debtors that it does not intend to honor its obligation to pay the second installment of the service allowance required by § 4.2 of the agreement when it becomes due July 1, 2002. This prompted the Trustee to file the instant motion.

### Position of Parties.

*Trustee.*[1]

Trustee asserts that the service allowance operates principally as an advanced rebate or discount on the cost of the inside-sales inventory, without which, debtors would not have agreed to the pricing

---

1. On June 21, 2002, the Creditor's Committee filed a response in support of Trustee's emergency motion for entry of a temporary restraining order asserting debtors' poor cash position during June 2002 and that McLane's breach of its obligations under the agreement may be a violation of the automatic stay provisions of 11 U.S.C. § 362(a)(3).

structure provided for in the agreement. Trustee argues that the agreement is a valid, enforceable contract between Trustee and McLane, under which material obligations remain due by both sides. Thus, Trustee asserts that he has until confirmation of a plan of reorganization to determine whether or not to assume or reject the agreement.

Trustee argues that he satisfies the necessary conditions to obtain a temporary restraining order.[2] Essentially, Trustee asserts that because of debtors' on-going liquidity problems, McLane's failure to pay the second installment as and when due could have a devastating impact on the Trustee's ability to continue to fund debtors' operations. Debtors' business will suffer irreparable harm because the Trustee may not be able to pay all fuel taxes when due and will almost certainly have to purchase substantially less fuel than is required to support its need for Independence Day travel and the summer season, which is when sales are traditionally highest. Trustee further argues that he is currently in discussions to sell the debtors' business as a going-concern and that McLane's actions could have a devastating effect on the value of debtors' assets to the detriment of debtors' estates and creditors.

Trustee asserts that McLane will not suffer any harm as it will have all of its bargained for rights under the agreement since payment of the second installment was a bargained for discount that McLane agreed to pay in advance based upon debtors' agreement to purchase inside sales inventory exclusively from McLane under the pricing structure for the term of the agreement.

*McLane.*

McLane argues that the service allowance is an interest free loan of money or financial accommodation by McLane to debtors that is unenforceable under § 365 of the Bankruptcy Code. In support of its position, McLane asserts that: 1) in the event debtors purchase product exclusively from McLane through the life of the agreement, debtors' repayment obligation is forgiven and 2) if debtors close or sell stores or otherwise cease to perform under the agreement, debtors have the obligation to repay the unamortized portion of the service allowance.

In opposition to the entry of a temporary restraining order, McLane asserts that: 1) the motion improperly seeks affirmative relief, 2) Trustee is not likely to succeed in its breach of contract claim, 3) issuance of a temporary restraining order will cause harm to McLane, and 4) issuance would be inconsistent with public interest.

In support of its assertion that it will suffer harm, McLane argues that according to the terms of the agreement, upon

---

**2.** To obtain injunctive relief, the standard the Trustee must satisfy is well-settled and beyond dispute:

It is now axiomatic which standards should be applied in this Circuit when determining whether a party's motion for preliminary injunctive relief should be granted.... A district court deciding whether to grant a preliminary injunction must consider the following four factors:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

*Manning v. Hunt,* 119 F.3d 254, 263 (4th Cir.1997) (citations omitted). Under this test, the first two factors, the potential for the respective harm to the parties, are the most important. *Id.*

sale of the convenience stores by debtors, the unamortized portion of the service allowance would be due McLane and that once Trustee sells the convenience stores it is likely that the agreement will be rejected. Thus, McLane asserts that its claim for repayment of the unamortized service allowance would be inequitably rendered a pre-petition unsecured claim. In further support of its assertion that the court's issuance of a temporary restraining order forcing it to pay the second installment would be inequitable, McLane asserts that it intends to argue its equitable right of recoupment in Trustee's adversary proceeding,[3] and that by granting the requested relief, the court will cause McLane to forfeit its recoupment rights.

### Jurisdiction and Venue.

This is a core proceeding and a contested matter under 28 U.S.C. § 157(b)(2)(O) and Rule 7001(7) of the Federal Rules of Bankruptcy Procedure. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue is proper in this Court under 28 U.S.C. § 1409(a).

### Conclusions of Law.

■ At hearing, counsel for McLane asserted that any ruling made by the court would be a violation of its due process rights in that counsel had only received one business day's notice of this hearing

and that he was unable to procure a witness. While the court sympathizes with the short notice period given to counsel in this matter, it is not swayed by McLane's due process argument for three reasons: 1) the urgency of the hearing is well documented in the record due to debtors' strained cash position, 2) McLane was on notice that a hearing on the issue at hand was likely to occur this week should McLane indicate to debtors that it would breach the agreement based on the due date of the second installment and debtors' impending tax payment due June 28,[4] and 3) the issue at hand can be decided on the plain wording of the contract.[5]

■ The existence of a contractual agreement between debtor and McLane under which McLane agrees to pay debtor a service allowance of $300.00 per store per month for sixty months is not in dispute. McLane appears to be attempting to selectively dishonor certain provisions of a bargained for agreement because of the Trustee's plans to sell debtors' assets and McLane's belief that ultimately debtors will be required to repay the second installment to McLane. However, Article IV § 4.4 of the agreement specifically provides that "[i]n the event [c]ustomer should sell close or otherwise cease operation of any of its stores during the term of this Agreement customer *shall promptly notify McLane* ... [and][c]ustomer shall pay to McLane ... the unamortized por-

---

3. McLane bases this argument on its assertion that debtor was in default under the terms of the agreement as of the petition date and that McLane has a pre-petition unsecured claim of approximately $6 million arising from the agreement.

4. At hearing on June 24, counsel for Trustee stated that negotiations had occurred in prior weeks with McLane with debtors asking McLane to pay its second installment by June 28, rather than July 1, because of the tax payment that was due.

5. Even though Trustee called two witnesses at hearing, Guy Davis, financial advisor to trustee, and Thomas M. Terry, Special Assistant to the President of Fas Mart Convenience Stores, Inc., the court does not find a need to consider this evidence in interpreting the nature of the agreement between Fas Mart and McLane. With respect to McLane's lack of a witness, the court had previously advised McLane that it could present its defense telephonically.

tion of the Service Allowance...." Agreement § 4.3 (emphasis added).

The court must follow the plain language of the contract, and the contract does not provide for anticipatory repudiation by McLane if it has a suspicion, no matter how well-founded, that debtor may sell, close or cease operation of its stores. Repayment is to occur upon the event of sale, closing or cessation of operations.

### A. Financial Accommodation.

■ The court is not convinced by McLane's argument that the service allowance is a financial accommodation under 11 U.S.C. §§ 365(c)(2) which Trustee cannot assume. This court has previously determined that "a contract 'for which the extension of credit is the primary purpose' may be deemed a financial accommodation under §§ 365(c)(2) and (e)(2)(B), [and] one 'in which the extension of credit is only incidental to or a part of a larger arrangement involving the debtor' cannot be so classified." *In re Best Products Inc.*, 210 B.R. 714, 717 (Bankr.E.D.Va.1997) (quoting *Citizens & S. Nat'l. Bank v. Thomas B. Hamilton Co., (In re Thomas B. Hamilton Co.)*, 969 F.2d 1013, 1019 (11th Cir. 1992)).[6]

While the agreement does contain a section concerning inventory financing, the overall agreement provides conditions under which debtor will purchase inside-sales inventory exclusively from McLane. The second installment of the service allowance appears to be an advance discount on pricing that is recouped by McLane over the term of the agreement via percentage mark-ups agreed to by the parties. It could even be characterized as an incentive paid by McLane to debtors to encourage the continued and exclusive usage of McLane as debtors' supplier of its inside sales inventory with the early termination penalty of repayment to McLane of the incentive should debtors terminate the agreement. Under either interpretation, the service allowance is not a financial accommodation under §§ 365(c)(2) and (e)(2)(B) as the primary purpose of the agreement is to provide terms to govern the sale of goods by McLane to debtors.

■ The Trustee has not determined whether to assume or reject the agreement with McLane. The Trustee, therefore, should be entitled to enforce debtors' rights under the agreement relating to post-petition date obligations and benefits until a final determination is made and approved by the Court. *See In re University Med. Ctr.*, 973 F.2d 1065, 1078 (3d Cir.1992) (holding that the Department of Health and Human Resources remained obligated to pay for services rendered under a Medicare service provider agreement by a debtor hospital post-petition but prior to the assumption or rejection of the agreement); *In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 379 (7th Cir.1983) (holding that the bankruptcy court did not err in issuing a restraining order compelling non-debtor party to an executory contract that had not been assumed or rejected to continue to perform under the terms of the executory contract until the debtor made the determination to assume or reject).

### B. Temporary Restraining Order.

■ Having determined that the contract entered into by McLane and debtor is not a financial accommodation, the court must now determine whether it would be appropriate to issue a temporary restrain-

---

**6.** The court in *Hamilton* found that the purpose of a credit card merchant agreement under which the bank could charge back a sales draft was "not financing, but the 'exchange of items.'" *Id.* at 717 (quoting *Hamilton*, 969 F.2d at 1020).

ing order requiring McLane to honor its contractual duties under § 4.3 of the agreement.

■ McLane has argued that Trustee is requesting affirmative relief in violation of the purpose of a temporary restraining order because "under federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir.1999) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 433 n. 7, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974)).

It appears to the court that requiring parties to abide by the terms of a valid contract under which both parties have been operating is maintaining the status quo. *See In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d at 380. (holding that an order of the Bankruptcy Court requiring that defendant perform pursuant to its contract with debtor "was directed solely toward maintaining the status quo. . . ."). The settlement order agreed to by the parties on October 31, 2001, altered various provisions of the Distribution Service Agreement but makes no mention of the payment of the second installment of the service allowance; neither does it broach repayment of any portion of the first installment that was paid on July 1, 1999. Since the date of the settlement order the parties have operated under the Distribution Service Agreement as modified by the settlement order. For the foreseeable future, the Trustee has indicated his intent to continue to operate pursuant to the terms of the agreement.

■ Section 105 of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Court, therefore, has the authority to enter the temporary restraining order provided that: 1) the balance of the harms weighs in favor of plaintiff, 2) plaintiff is likely to succeed on the merits, and 3) public policy favors granting the relief. *Manning*, 119 F.3d at 263. The court should weigh the first factor heaviest in determining whether the issuance of a temporary restraining order is appropriate. *Id.*

### 1. *Balancing the Hardships.*

■ The moving party must "prove a 'clear showing of immediate irreparable injury . . . [that is] actual and immediate.'" *Winfield Food Sys. Inc. v. Hardee's Food Sys., Inc.*, No. 4:95CV00542, 1996 U.S. Dist. LEXIS 13957, at *15 (M.D.N.C. August 8, 1996) (citations omitted). Upon proving irreparable injury, plaintiff must further show that its injury outweighs the injury that would be suffered by defendant. *Id.* (quoting *Maxim's Ltd. v. Badonsky*, 772 F.2d 388, 392 (7th Cir.1985)).

McLane argues that it will be harmed if the court issues this temporary restraining order because it will cause McLane to forfeit its recoupment argument that it plans to assert in the Trustee's adversary proceeding. Recoupment is an equitable principal that allows a defendant "to show that he or she is not liable in part or in full for the plaintiff's claim due to matters or events arising out of the same transaction." 5 Collier on Bankruptcy ¶ 553–10 (Lawrence P. King 15th ed. rev.2002). The ultimate issue is whether the relevant obligations constitute part of the "same transaction" which must be determined on

a case by case basis. *Id.* at ¶ 553–10[1].[7]

Generally, courts have narrowly construed the doctrine of recoupment. *Id.* at ¶ 553–10[3]; *see also Peterson Distrib., Inc. v. Styler*, 82 F.3d 956, 959 (10th Cir. 1996) (citations omitted) (stating that "[r]ecoupment is 'narrowly construed' in bankruptcy cases because it violates the basic bankruptcy principle of equal distribution to creditors"). Courts have held that " 'a mere logical relationship is not enough' to warrant recoupment in the bankruptcy context." *Malinowski v. New York State Dept. of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir.1998) (quoting *In re Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1080–81 (3d Cir.1992) (stating that "[t]he fact that a contract exists between the debtor and creditor [does not] automatically enable the creditor to effect a recoupment")).

Without hearing oral argument[8] on the issue of recoupment, the court is not in a position to determine whether or not McLane has a right of recoupment. However, even if McLane has a valid right to recoup, the court believes that the potential injury to debtors far outweighs the potential harm to McLane because the potential harm to McLane is less imminent, entirely pecuniary, and more easily corrected at a later date. *See In re Healthmaster Home Health Care, Inc. v. Shalala (In re Healthmaster Home Health Care, Inc.)*, No. 95–01031A, 1995 WL 928920, at *1, 1995 Bankr.LEXIS 2159, at *5–6 (Bankr.S.D.Ga. April 13, 1995) (holding

that the issuance of a temporary restraining order forbidding defendant from withholding payment for Medicare services from debtor was proper even where defendant had a potential right of recoupment).

Granting the temporary restraining order as requested will essentially have no negative impact upon McLane. If debtors choose to reject the agreement in the future, McLane will have available to it, as a means to recover the unearned amounts of the second installment, the remedy provided for in the agreement which is the exact same remedy it had prior to the petition date and the same remedy for which it bargained. Moreover, the Trustee has extended an offer of additional protection to McLane by agreeing to elevate McLane's right to repayment of the second installment, in the event this situation arises, to the status of an administrative claim pursuant to 11 U.S.C. § 503(b)(1) rather than a general unsecured claim. This mitigates the harm that could potentially be suffered by McLane.

In balancing the hardships to both parties, the equities favor granting the Trustee's motion. McLane's failure to honor its contractual obligations affects not only debtors, who are relying on McLane's payment of the second installment to cover a July fuel tax payment and to purchase fuel inventory, but also affects debtors' estate and ultimately the creditors. Non-payment of the tax would result in revocation of debtors' license to sell fuel and effectively shut down debtors' business.[9] Also,

---

**7.** Based on the equitable nature of recoupment, "courts have refrained from precisely defining the same transaction standard, focusing instead on the facts and the equities of each case." *Kosadnar v. Metropolitan Life Ins. Co.*, 157 F.3d 1011, 1015 (5th Cir.1998) (citations omitted).

**8.** On June 25, the court solicited briefs from both sides regarding McLane's potential right

of recoupment. The briefs were received on June 27.

**9.** Courts have held that "proof that a going concern will be forced out of business during the pendency of litigation raises a presumption of irreparable harm." *Winfield Food Sys., Inc. v. Hardee's Food Sys., Inc.*, 1996 U.S. Dist. LEXIS 13957, at *12 (quoting *Unit-*

debtors' inability to purchase sufficient fuel inventory to maximize revenues during its busiest weekend of the year will certainly affect the percentage payout to unsecured creditors by negatively impacting debtors' value to potential purchasers.

### 2. *Likelihood of Success on the Merits and Public Policy.*

Plaintiff must show "at least a substantial possibility of prevailing on the merits." *See UV Industries, Inc. v. Posner*, 466 F.Supp. 1251, 1256–57 (D.Me. 1979). It appears to the court that the Trustee has a substantial likelihood of succeeding on the merits in his claims for a preliminary injunction and a determination that any failure by McLane to pay the second installment pursuant to the terms of the agreement will constitute a material breach of the agreement under which the debtors and trustee, and even McLane have been performing.

Lastly, the public interest is best served by requiring McLane to fulfill its contractual obligations to allow debtor to most effectively operate until this matter can be resolved. Therefore, the court will grant Trustee's motion for issuance of a temporary restraining order enjoining McLane from breaching the Distribution Services Agreement.

### *Conclusion.*

Based on the language and purpose of the Distribution Service Agreement, the required payment is not a financial accommodation under §§ 365(c)(2) and (e)(2)(B) as the primary purpose of the agreement is to govern the sale of goods by McLane rather than to provide an extension of cash or line of credit. As such, the Trustee should be entitled to enforce debtors' rights under the agreement relating to

post-petition obligations and benefits until a final determination is made and approved by the Court regarding the Trustee's assumption or rejection of the agreement.

Based on the undisputed agreement between the parties combined with both parties' continued performance pursuant to the contract, the court finds that McLane is not entitled to breach its contract with debtors based on its belief that debtors' stores will be sold and that the installment service agreement would have to be repaid by debtors nor based on its belief that it has a right of recoupment.

In considering the elements necessary for the court to issue a temporary restraining order, the court finds that: 1) in balancing the hardships to both parties, debtors would be harmed more if the temporary restraining order is not issued than McLane if the order is issued, 2) Trustee is likely to succeed on the merits of the case, and 3) public policy favors the entry of this temporary restraining order.

Therefore, the court will grant Trustee's motion for issuance of a temporary restraining order enjoining McLane from breaching the Distribution Services Agreement with the condition that in the event of the termination of the agreement or debtors cease to perform under the agreement, McLane shall be entitled to an administrative claim [10] pursuant to 11 U.S.C. § 503(b)(1) for the portion of the second installment that was unearned as of the repayment date, as calculated pursuant to § 5.5 of the agreement.

A separate order will be entered.

---

ed States v. Any and All Assets of Shane Co., 816 F.Supp. 389, 400 (M.D.N.C.1991)).

**10.** Pursuant to its § 105 equitable powers, the court has wide latitude to fashion an appropriate order.